# OCTOBER TERM, 1899.

MICHIGAN TRUST CO. *v.* LANSING LUMBER CO.[1]

1. MORTGAGES—FORECLOSURE—ORDERS PENDENTE LITE — APPEAL —RES JUDICATA.

   A decision of the Supreme Court vacating an order of the circuit court, on foreclosure bill and answer, for the appointment of a receiver for defendant corporation and the issuance of an injunction *pendente lite,* is not an adjudication of the merits which may be relied upon in a subsequent proceeding as establishing that the corporation was not in default, and that the filing of the bill was an illegal interference with its business, releasing a surety on its bonds.

2. SAME—SURETY—LIABILITY FOR DEFICIENCY.

   Where, on a bill to foreclose, the question of the personal liability of a surety for a deficiency is raised by the pleadings, the court may determine it in the original decree.

3. SAME—EXPENSES OF BUSINESS—PAYMENT BY TRUSTEE.

   Under a trust mortgage providing that the mortgagor, a corporation, should deposit all moneys received by it to the credit of ·the trustee, who should pay over to it·such amounts as should be necessary for interest, taxes, insurance, and expenses in the regular course of its business, the trustee cannot be required to pay over for expenses and interest any moneys except those so deposited.

Appeal from Ingham; Person, J.   Submitted April 21, 1899.   Decided October 3, 1899.

Bill by the Michigan Trust Company against the Lansing Lumber Company and Orlando M. Barnes to foreclose a trust mortgage.   From a decree of foreclosure, but releasing defendant Barnes, complainant appeals.

Defendant lumber company appeals from a final order

---

[1] Rehearing (application of defendant Barnes) denied December 12, 1899.

denying its petition for an allowance for interest and expenses out of assets in the hands of the trustee.

Affirmed as to foreclosure and denial of petition, and reversed as to release of defendant Barnes.

*Fletcher & Wanty,* for complainant.

*R. A. Montgomery* (*Bartlett Wiley,* of counsel), for defendant lumber company.

*Russell C. Ostrander,* for defendant Barnes.

HOOKER, J. Some years ago there was a going concern known as the Lansing Lumber Company. It was indebted to a large amount, secured by negotiable paper, upon which defendant Orlando M. Barnes was an accommodation maker and indorser. In 1893 it became seriously involved, and on April 17th of that year gave mortgages on most of its property to Orlando M. Barnes to indemnify him. Subsequently, and about May 1, 1893, negotiations between it and its creditors, to which Orlando M. Barnes was a party, resulted in an arrangement whereby a ·trust deed or mortgage was given to the complainant to secure the payment of certain bonds issued to its creditors. Orlando M. Barnes guaranteed the payment of such bonds as were issued for debts upon which he was theretofore liable, and assigned his mortgages to the complainant. The bonds guaranteed by Barnes are called the "A Bonds," and others "B Bonds." The arrangement contemplated the continuation of the business ·by the Lansing Lumber Company, and the payment of its debts from its receipts. The following provisions were included in the trust deed:

"Said trustee shall exercise the duties of his office for the purposes of preserving the interests of the stockholders as well as of the bondholders.

"Said trustee shall have power, upon the failure of said company to provide sufficient means during any half year to pay the interest due at the end thereof, or within one month thereafter, at the request of a majority in interest

of all the creditors secured hereby, to declare this mortgage due and payable at once, and proceed to foreclose the same.

"Said trustee, if at any time the business of said company is not profitable, or if the management thereof by the company is so wanting in economy, in the judgment of the trustee, as to endanger the security of the bondholders, may, if a majority in interest of said bondholders shall so request in writing, take possession of all the property, real and personal, of said company, and its entire business, and conduct the same in the ordinary way for the benefit of the parties in interest, paying the net income of said business, after the taxes upon the property, the insurance, and the expenses are paid, upon said bonds, until the principal and interest of said bonds are paid; or, upon taking possession as herein provided, if a majority in interest of the bondholders shall so request in writing, said trustee shall proceed to foreclose this mortgage."

The trust deed was dated May 1, 1893, and on May 4, 1894, the bondholders served upon the trustee a request to take possession of the property and foreclose the mortgage, because the business was not profitable, and on June 8, 1894, the bill was filed. An order appointing a receiver and restraining the defendants was made by the circuit court. Upon appeal by Orlando M. Barnes this order was vacated, and the cause was remanded for further proceedings. *Michigan Trust Co.* v. *Lansing Lumber Co.*, 103 Mich. 392. Proofs were taken, but we are not advised that the case ever went to hearing. Subsequently this bill was filed to foreclose the trust deed. A demurrer filed by the Lansing Lumber Company was overruled, and, an appeal being dismissed, the Lansing Lumber Company stipulated that a decree of foreclosure might be entered. Defendant Barnes having answered, the case was heard upon pleadings and proofs. Upon the hearing the circuit court decreed foreclosure, but found that the filing of the bill was such an interference with the business of the Lansing Lumber Company as to amount to a legal wrong, and that the surety was thereby released, and dismissed the bill as to Orlando M. Barnes. In the

account of the complainant, interest on daily balances was credited, amounting to $6,050.50, and it charged for services $11,500. The decree allowed $5,900 for the services. Complainant has appealed, claiming that a personal decree for deficiency should have been entered against Mr. Barnes, and that reasonable compensation was not allowed for its services.

The learned circuit judge was of the opinion that the decree of this court vacating the order for a receiver was a final adjudication that the creditors had no just reason for causing this foreclosure proceeding to be instituted, and that such proceeding was an illegal interference with the business of the Lansing Lumber Company, which they should have permitted it to continue until there was a default, and that by such proceeding the surety was released. The merits of this question were not before this court upon the former hearing. The only question there raised was the propriety of an injunction and receivership *pendente lite.* It was disposed of upon the pleadings alone, and could not be considered final upon the merits, and it was not so considered by court or counsel, for they proceeded with the taking of proofs in the case. It was an open question upon the trial of the case, and in his opinion the court expressly says that, "so far as the Lansing Lumber Company is concerned, the default was satisfactorily proved." We think his conclusion in that respect was justified by the testimony, and we also think, as we have already indicated, that the question was not *res adjudicata* as to Mr. Barnes. We merely held that, upon bill and answer, the order for a receiver and an injunction was improvidently made.

Inasmuch as the evidence shows that there was a default, it was complainant's right to file the bill, and it follows that the surety was not thereby discharged. We need not discuss the legal question raised and argued upon the theory that the foreclosure was unwarranted, and express no opinion upon it. But see *Union Trust Co.* v. *Detroit Motor Co.*, 117 Mich. 631.

In the opinion of the circuit judge some prominence is given to the question of the authority of the court to determine the liability of Mr. Barnes for a deficiency. That question was raised by the pleadings, and has been litigated by the parties, and we think the court's view was correct. *Simons* v. *McDonnell,* 120 Mich. 621; *Miller* v. *Childs*, Id. 639.

Another question is before the court upon appeal in this case. A petition made by the Lansing Lumber Company, verified upon the 9th day of September, 1898, is filed, alleging, among other things, that:

"Said trust deed contained and contains a provision, in substance, that said complainant shall turn over to your petitioner, for the purpose of providing for the disbursements, including the interest, taxes, insurance, and expenses of your petitioner in the regular course of its business, such amounts as were found from time to time to be necessary for that purpose during the continuance of the trust provided for in said deed."

It also states that there are outstanding debts amounting to several thousand dollars, incurred for current expenses and interest that accrued on the B bonds during the time that the Lansing Lumber Company conducted business. It is claimed that the complainant was bound to furnish money to pay these, but has refused, and the petition asks that it be required to pay to the petitioner a sufficient sum to pay the same. The court denied the petition by an order bearing date July 18, 1898. We suppose that there must be a mistake in the printed record in relation to these dates, as no question is raised over the apparent discrepancy.

The following are the provisions of the deed:

"All moneys received by said company during the continuance of said trust shall be deposited in some bank or banks to be selected by the trustee, the deposit to be to the credit of said trustee. For the purpose of providing for the disbursements, including the interest, taxes, insurance, and expenses of said company in the regular course of its business, said trustee shall turn over to the said company

such amounts as shall from time to time be necessary for that purpose: *Provided,* that the amount so in the hands of the company for current expenditures shall at no time exceed the sum of ten thousand dollars. The company shall preserve vouchers for all disbursements made by it. At the beginning of every month, and whenever it shall be necessary for the company to have further funds for the payment of expenses, it shall turn over to the trustee all the vouchers on hand, and account for all the money received by it since the last accounting. After a sufficient sum has been set aside by the trustee to pay the current expenses of the company and the interest on its bonds for the current half year, and after the debts which are liens upon the property are paid, all the surplus income of said company shall be applied to the payment and retirement of the bonds issued hereunder, and in the following order, viz."

We are of the opinion that this deed does not require that the trustee should use moneys not received from the business to pay such expenses or interest on bonds. It contemplates such payment from earnings. The Lansing Lumber Company was a mortgagor in possession, with a right to sell mortgaged property in the course of business. Such sales would be binding upon the trustee, but persons giving credit would have no prior lien or claim upon the mortgaged property, as the deed did not authorize the Lansing Lumber Company to incur obligations binding upon the property. The deed contemplated payment of interest on the B bonds from the earnings of the Lansing Lumber Company, but we think there is nothing in the deed to justify the claim that the Lansing Lumber Company might require payment from the estate through itself. If the trustee holds property subject to a right of such bondholders, such right can be enforced by the court on application of the bondholders; but we think that the Lansing Lumber Company is not entitled to disburse the fund. It is said, and we do not discover that it is disputed, that no earnings ever came to the hands of complainant, for the reason that the Lansing Lumber Company never deposited money according to the provisions

of the deed, but, on the contrary, used all moneys received by it. The complainant has therefore no fund from which it is authorized to pay such claims.

We are of the opinion that the determination of the circuit judge in relation to the compensation of the complainant should not be disturbed.

The decree of the circuit court will be reversed as to defendant Orlando M. Barnes, who is held liable for any deficiency upon the A bonds that may arise after the proceeds of the sale shall be applied on the amount of indebtedness upon the A bonds. In other respects it will be affirmed. The complainant will recover costs of this court.

The other Justices concurred.