GEORGE A. BUTTERFIELD AND JOHN H. CRABLE v. FRANK W. GILCHRIST.

*Logs—Compensation for breaking jams.*

1. The statutory right to recover compensation for breaking log-jams and running the logs of another cannot be maintained unless the owner of such logs has neglected to take proper measures to keep them out of the way of other persons using the stream; and it will not cover labor expended in putting logs into the stream, nor items not covered by the declaration.

2. Objection for the non-joinder of plaintiffs should be made by plea in abatement, and comes too late if raised, for the first time, on error.

3. The statutory action of assumpsit for breaking a log-jam lies, if at all, against the owner of the logs and not against those whom he has hired to run them; it is the owner's duty to see that they do not obstruct the water-course.

4. The use of a navigable stream is open to everybody equally; no log-owner can exclude another from it any longer than may be necessary, if he be first in occupation, to float his logs by the natural current.

5. Statements by an employee of a firm that has been hired to run logs cannot bind the log-owner in a statutory proceeding against him to recover compensation for breaking his log-jams.

6. One who is sued for compensation for breaking a jam of his logs is entitled to show the circumstances of the situation complained of, and in so doing can show that plaintiff had no boom in which to receive the logs after breaking the jam. He can also show that he looked after the business and did not move the logs because up to the time of the interference therewith he thought it useless to touch them, and afterwards they were in plaintiff's possession.

Error to Alpena.    (Emerick, J.)    Jan. 17.—March 6.

Assumpsit.    Defendant brings error.    Reversed.

*J. D. Turnbull* for appellant.

*R. J. Kelley* and *A. McDonell* for appellees.

Sherwood, J.    This is an action of assumpsit, based upon the statute giving a party the right to break jams and run logs when the owner neglects to do so to the injury of others having logs to run, above him in the stream.    See How. Stat. § 2035.

In Alcona county is a stream known as West Branch, which empties into Hubbard lake.    Two creeks known as Brown and Comstock, unite about five miles from the lake and form West Branch.    About one mile from the mouth of the West Branch, up the stream, enters what is known as Butterfield creek.    These streams are all largely used for lumbering purposes.

In the winter of 1880 and 1881 the plaintiffs put in and banked upon Butterfield creek 1,600,000 feet of logs, and at a point below these and near the junction with West Branch, defendant Gilchrist had put in and banked on the creek about 1,400,000.    The defendant's logs on this stream were piled in the channel and extended entirely across the stream, so as to wholly obstruct its navigation in the spring of 1881.    Mr. Comstock also had a large quantity of logs in the West Branch, between Butterfield creek and the lake, and defendant Gilchrist also had a large quantity of logs then upon that part of the stream.    Other parties had also large quantities of logs above the plaintiff on the West Branch and the Butterfield, as well as on each of the other creeks.    All these logs

had to be brought out of the creeks and down the West Branch into the lake, and then formed into rafts and taken to market or place of manufacture.

Butterfield creek is a small stream, and in order to float logs upon it they must be moved during high water or a freshet, which usually occurs in the spring. The plaintiff called on the defendant in March and told him he wanted him to see that his logs were taken out so that plaintiff could get his through. Defendant answered that he had let his logs to Bewick, Comstock & Co. to drive, and that plaintiff would have to see them. Plaintiff saw Comstock and notified him that he wanted him to move the logs.

Nothing appears upon the face of the declaration showing other parties interested in the claim made by plaintiff. If other parties should have been joined, the question should have been raised by plea in abatement, and it is now too late to take advantage of such error. The suit is also properly brought against the defendant, if it can be maintained at all. *Hall v. Tittabawassee Boom Co.* 51 Mich. 377. His employees are under no obligation to the plaintiff, statutory or otherwise. It was the duty of defendant to see to it that he did not obstruct the water-course.

A portion of the claim of the plaintiff was for work done in driving logs and clearing channel in West Branch. These charges are objected to, and we think properly so. There is no claim made for the same in the declaration.

All persons have an equal right to the use of the stream, and one cannot occupy it to the exclusion of another any longer than may be necessary to float his logs down upon the natural current. When the stream is occupied miles in length, as in this case, by logs of different persons, the person in first has the right to claim the use of the current first, and if the party in first uses all the force necessary to drive his logs he cannot be made liable in this action under the statute.

The defendant's logs and others were in the West Branch, above and below and opposite the entrance of Butterfield creek into the branch, and it was claimed the mouth of the creek was blockaded by the defendant's logs, so that plaintiffs'

logs could not be taken into the branch, and defendant proposed to show that all reasonable means and sufficient force to drive the logs in the branch as fast as they could be driven were used; and this was objected to by plaintiffs' counsel and the ruling sustaining the objection was excepted to by defendant. We think the exception well taken. Under the circumstances proposed to be shown no liability whatever would attach to defendant.

The defendant was also on the trial held liable for the expense of making space to receive the plaintiffs' logs after the Gilchrist logs had been put into the West Branch. This was error as we have said—no such claim is made in the declaration; besides, the logs in West Branch were mixed, belonging to several different parties. The court's refusal to charge in accordance with defendant's requests upon these points is also error.

The testimony further shows that a portion of the claim made on the trial was for rolling defendant's logs from one hundred feet back of the banks into the stream. This is not permissible under the statute. It is for breaking jams and driving logs in the stream to clear the channel that allowance is authorized, and it was error to admit testimony of that character.

We do not think the conversation with Blair was competent and admissible. He was a man in the employ of Bewick, Comstock & Co., and held no relation with the parties which would make what he said binding upon the defendant. It might not have prejudiced the right of the defendant; but when the effect is doubtful it would be dangerous to allow the judgment to stand.

We also think it was competent for the defendant to show that the plaintiff had no boom on the West Branch, near or at its mouth, to receive these logs. It tended to show the surroundings of the situation complained of by plaintiffs.

The plaintiffs offered evidence tending to show that the men were put on the defendant's logs in Butterfield creek, and the work they did greatly helped to get the logs out of plaintiffs' way and clear the channel for the logs, and that

defendant did not furnish the necessary men for that purpose. To rebut this the defendant offered to show by the witness Blair "that he was there supervising the matter; that he was looking after the creek each day, and he had sufficient men there to have taken out the Gilchrist logs in the quickest possible time, but that in his judgment it was useless to touch the Gilchrist logs up to the time that the plaintiffs commenced, and at the time the plaintiffs commenced on the logs to roll them in, that he then had sufficient force to have taken the Gilchrist logs and put them in and taken them away, and kept them away from the different logs behind, and that the reason why he did not do so was because plaintiffs took possession of the logs."

We think the offered testimony should have been received. It certainly tended to meet the testimony of plaintiffs, and destroy the necessity which had to be shown to entitle the plaintiffs in any event, to recover. Either of the parties in this case had the right to float his property upon the current down these streams, and while thus floating it could not be disturbed or supplanted by any other person. It is only when a person so uses the stream as to unreasonably deprive another above him of the benefit of the current or natural flow of the water, with jams or booms, that the statute allows the upper occupant to move the obstruction caused by the lower, at the expense of the latter.

We have not considered the errors assigned seriatim. They are very numerous, and we have rather considered them in groups upon the various subjects to which they relate, and in this manner have noticed all needing consideration. We have also considered fully the charge of the court, which is not sufficient to cure the errors herein noticed.

The judgment must be reversed and a new trial granted.

The other Justices concurred.